# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

HIGH ROAD CRAFT ICE CREAM, INC.,

      Plaintiff,

             v.

NOLAN TRANSPORTATION GROUP, LLC;
C. DAVIS XPRESS, LLC; USCS LOGISTICS,
LLC; NATIONAL INDEMNITY COMPANY,
INC.; ONEBEACON INSURANCE GROUP;
AND INSURANCE COMPANY DOES 1-10,

      Defendants.

Civil Action No.
1:19-cv-01885-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant Nolan Transportation Group, LLC's ("Nolan") motion to dismiss [ECF 44] and Defendant OneBeacon Insurance Group's ("OneBeacon") motion to dismiss [ECF 47]. Also before the Court is a motion for leave to file a surreply [ECF 71] filed by Plaintiff High Road Craft Ice Cream, Inc. For the following reasons, Nolan's motion is **GRANTED IN PART and DENIED IN PART**; OneBeacon's motion is **GRANTED**; and High Road's motion is **GRANTED**.

1

## I.    BACKGROUND

The Court treats the following facts as true for the purposes of these motions.[1] In April 2018, High Road agreed to sell a shipment of approximately 2,880 cartons of frozen ice cream to H.E.B. Grocery Company ("HEB").[2] The ice cream shipment possessed an alleged value of $72,345.60.[3] High Road contracted with Defendant USCS Logistics, LLC ("USCS") to transport the shipment from Cartersville, Georgia to HEB's location in San Antonio, Texas.[4] To complete the shipment, USCS subcontracted with Nolan, which in turn, contracted with Defendant C. Davis Xpress, LLC ("Davis Xpress").[5] The Bill of Lading for the shipment contained the following instructions: "MUST MAINTAIN -20F/ CONTAINS FROZEN PRODUCT."[6]

---

[1]    *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

[2]    ECF 30, ¶ 19.

[3]    *Id*. ¶ 30.

[4]    *Id*. ¶ 20.

[5]    *Id*. ¶¶ 20–21.

[6]    *Id*. ¶ 23.

On April 27, 2018, Davis Xpress delivered the shipment to HEB's location in San Antonio, Texas.[7] On delivery, HEB discovered the ice cream had melted to the extent that it could no longer be sold, which resulted in HEB rejecting the delivery.[8] According to High Road, the shipment became damaged as a result of a malfunctioning refrigerator unit on Davis Xpress's truck.[9]

High Road initiated this action on April 26, 2019.[10] On August 23, 2019, High Road filed the operative Third Amended Complaint, asserting four causes of action against the named and unnamed Defendants.[11] In Count I, High Road asserts a claim under the Carmack Amendment of the Interstate Commerce Act ("ICA") against USCS, Nolan, and Davis Xpress.[12] In Count II, High Road asserts a negligence claim against USCS and Nolan.[13] In Count III, High Road asserts a breach of contract claim against USCS and Nolan.[14] In Count IV, High Road asserts

---

[7]   *Id.* ¶ 27.

[8]   *Id.* ¶ 28.

[9]   *Id.* ¶ 29.

[10]   ECF 1.

[11]   ECF 30.

[12]   *Id.* ¶¶ 35–40.

[13]   *Id.* ¶¶ 41–51.

[14]   *Id.* ¶¶ 53–64.

a claim for insurance liability against National Indemnity Company Inc. ("National Indemnity"), OneBeacon, and ten unnamed "Doe" insurance companies.[15]

On September 20, 2019, Nolan filed its motion to dismiss all claims asserted against it (Counts I–III).[16] On September 23, 2019, OneBeacon filed its motion to dismiss the only claim asserted against it (Count IV).[17] High Road filed its response in opposition to Nolan's motion on October 4, 2019, and its response to OneBeacon's motion on October 7, 2019.[18] OneBeacon filed its reply on October 21, 2019; Nolan filed its reply on October 25, 2019.[19] On October 24, 2019, High Road filed a motion for leave to file a surreply to OneBeacon's motion to dismiss.[20]

Davis Xpress has not appeared in this action. On October 15, 2019, the Clerk entered a default against Davis Xpress.[21] On October 30, 2019, High Road filed

---

[15]  *Id.* ¶¶ 65–66.

[16]  ECF 44-1.

[17]  ECF 47.

[18]  ECF 57; ECF 66.

[19]  ECF 70; ECF 72.

[20]  ECF 71.

[21]  *See* ECF 67.

stipulations to the dismissal, with prejudice, of USCS and National Indemnity, which the Clerk duly entered.[22]

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.,* 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n,* 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not

---

[22]   ECF 76; ECF 77.

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

## III.   NOLAN'S MOTION TO DISMISS

Nolan seeks the dismissal of all claims asserted against it: Counts I–III of the Third Amended Complaint. The Court analyzes each Count in turn.

### a.   High Road's Claim Under the Carmack Amendment (Count I)

Nolan argues that it cannot, as a matter of law, be liable to High Road under the Carmack Amendment for damages related to the April 2018 shipment because it acted as a broker, rather than a motor carrier, with respect to that shipment.

### i.    Background on the Carmack Amendment

"The Carmack Amendment to the Interstate Commerce Act makes common carriers liable for actual loss of or damage to shipments in interstate commerce." *A.I.G. Uruguay Compania de Seguros, S.A. v. AAA Cooper Transp.*, 334 F.3d 997, 1003 (11th Cir. 2003) (citing 49 U.S.C. § 14706(a)(1)). Congress enacted the Carmack Amendment to "achieve uniformity in rules governing interstate shipments, including the rules governing injury or loss to property shipped." *UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1285 (11th Cir. 2014) (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 506 (1913)). To ensure such uniformity, the Carmack Amendment "preempts state-law claims against interstate motor carriers who provide motor vehicle transportation or service subject to jurisdiction under the Interstate Commerce Act and replaces those state-law claims with its strict-liability provision." *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1300 (11th Cir. 2018) (citing 49 U.S.C. § 14706(a)(1)) (internal punctuation omitted). Congress explicitly provided a private right of action against the "carrier" alleged to have caused loss or damage to a shipment. 49 U.S.C. § 14706(a)(1) & (d)(2). To state a claim under the Carmack Amendment, a plaintiff must establish that "(1) the goods were delivered to the carrier in good condition, (2) the goods arrived at the destination in damaged condition, and (3) a

7

specified amount of damages resulted." *A.I.G. Uruguay*, 334 F.3d at 1003 (citing *Fine Foliage of Fla., Inc. v. Bowman Transp., Inc.*, 901 F.2d 1034, 1037 (11th Cir. 1990)).

### ii.   Application of the Carmack Amendment

As a threshold matter, Nolan is correct that the Carmack Amendment applies only to motor carriers, not brokers. In *Essex Insurance Company v. Barrett Moving & Storage, Inc.*, the Eleventh Circuit made clear that if the defendant "was a 'motor carrier,' the Carmack Amendment applies, state-law claims are preempted, and [defendant] is strictly liable for the damage sustained during transportation," but if defendant "was a 'broker,' the Carmack Amendment does not apply." 885 F.3d at 1299. *See also id.* at 1300 (stating Carmack Amendment "does not apply to brokers, which are purposefully distinguished from motor carriers"); *Factory Mut. Ins. Co. v. One Source Logistics, LLC*, Civ. A. No. 16-6385, 2017 WL 2608867, at *7 (C.D. Cal. May 5, 2017) (same); *Sompo Japan Ins. Co. of Am. v. B&H Freight, Inc.*, 177 F. Supp. 3d 1084, 1087 (N.D. Ill. 2016) (holding "brokers are not liable under the Carmack Amendment"); *Total Quality Logistics, LLC v. O'Malley*, No. 1:16-cv-636, 2016 WL 4051880, at *2 (S.D. Ohio July 28, 2016 ) ("The liability provisions within the Carmack Amendment do not apply to brokers and therefore, a broker is not a proper party in a Carmack Amendment cause of action."); *Olympus Dairy*

*USA Corp. v. Pavil Assocs., Inc.*, No. 12-cv-1897 RML, 2013 WL 6493482, at *2 (E.D.N.Y. Dec. 6, 2013) ("The Carmack amendment imposes liability on carriers and freight forwarders but not on brokers, as those terms are defined by the statute, and thus it is critical to determine whether a defendant was acting as a carrier or freight forwarder, or as a broker, in relation to the particular shipment that was damaged.") (internal punctuation omitted). Thus, the dispositive question here is whether Nolan acted as a "motor carrier" or "broker" with respect to the April 2018 shipment.

The Act defines a "carrier" as a "motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). A "motor carrier," in turn, is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). Conversely, a "broker" is defined as:

> [A] person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation.

49 U.S.C. § 13102(2).

In *Essex*, the Eleventh Circuit stated the "operative textual distinction between a broker and a motor carrier is whether a party *provides transportation* with regard to a given shipment, or whether it *sells, negotiates, or holds itself out* as

9

providing transportation of that shipment." *Essex*, 885 F.3d at 1300 (emphasis in original). While noting the line between "providing" and "selling" a shipment is often "blurry," the Eleventh Circuit found that the "key distinction is whether the disputed party accepted legal responsibility to transport the shipment." *Id*. at 1301. *See also Tryg Ins. v. C.H. Robinson Worldwide, Inc.*, 767 F. App'x 284, 286–87 (3d Cir. 2019) ("[T]he crucial question is whether the party has legally bound itself to transport goods by accepting responsibility for ensuring the delivery of the goods. If an entity accepts responsibility for ensuring the delivery of goods, then that entity qualifies as a carrier regardless of whether it conducted the physical transportation. Conversely, if an entity merely agrees to locate and hire a third party to transport the goods, then it is acting as a broker.").

The Department of Transportation, the administrative agency responsible for interpreting the ICA, likewise instructs:

> Broker means a person who, for compensation, arranges, or offers to arrange, the transportation of property by an authorized motor carrier. Motor carriers, or persons who are employees or bona fide agents of carriers, are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport.

49 C.F.R. § 371.2(a).

The Eleventh Circuit has described the motor carrier or broker inquiry as an "inherently fact-intensive" question that is often "not well suited to summary judgment." *Essex*, 885 F.3d at 1302 (quoting *Nipponkoa Ins. Co., Ltd. v. C.H. Robinson Worldwide, Inc.*, No. 09 Civ. 2365 (PGG), 2011 WL 671747, at *5 (S.D.N.Y. Feb. 18, 2011)).

Nolan argues it cannot be classified as a motor carrier because it is solely licensed as a broker, has only portrayed itself as a broker, and is referred to as a broker in the operative contracts.[23] In doing so, Nolan attempts to transmute its motion to dismiss into one more akin to summary judgment. Nolan requests the Court take judicial notice of documents it purports list it as a "property broker," not a motor carrier.[24] Nolan also points to two agreements that it contends refer to it as a "broker."[25]

The Court's judicial notice and consideration of these documents notwithstanding, "[w]hether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. All Am.*

---

[23]   ECF 44-1, at 17–18.

[24]   ECF 11-2; ECF 25-1.

[25]   ECF 21-5; ECF 21-6.

*Freight, Inc.*, No. 14-cv-62262, 2015 WL 11714338, at *2 (S.D. Fla. May 18, 2015) (quoting *Hewlett–Packard v. Bros. Trucking*, 373 F. Supp. 2d 1349, 1352 (S.D. Fl. 2005)). *See also The Mason & Dixon Lines, Inc. v. Walters Metal Fabrication, Inc.*, No. 13-cv-1262-SMY-DGW, 2014 WL 4627715, at *3 (S.D. Ill. Sept. 16, 2014) ("Whether a company is a broker or a carrier/freight forwarder is not determined by how it labels itself, but by how it holds itself out to the world and its relationship to the shipper.") (quoting *Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc.*, 303 F.Supp.2d 920, 921 (N.D. Ill. 2003)). Indeed, the labels "broker" and "motor carrier" are not mutually exclusive, as a company can act as a broker and motor carrier for the same shipment. *See Essex*, 885 F.3d at 1300, 1302 ("This is necessarily a case-specific analysis . . . [b]ut the question need not always be difficult. . . . [T]he operative inquiry is this: pursuant to the parties' agreement, with whom did the shipper entrust the cargo?").

Thus, the relevant inquiry requires the Court to probe the facts and circumstances surrounding how Nolan held itself out and performed its business on this particular transaction, as well as the details of the April 2018 shipment. Given the Eleventh Circuit's admonition that this is a fact-intensive inquiry often unsuitable for summary judgment, *Essex*, 885 F.3d at 1302, the question of whether a party is a "broker" or "motor carrier" generally should not be decided at the

motion to dismiss stage. *See also Hartford Fire Ins. Co. v. Dynamic Worldwide Logistics, Inc.*, No. CV 17-cv-553-SDW-LDW, 2017 WL 3868702, at *2 (D.N.J. Sept. 5, 2017) ("It is inappropriate for this Court to make any factual determinations regarding the precise nature of CECO's business status and/or activities as to the transactions at issue. Plaintiff's allegations are sufficient at this stage in the proceedings to state a claim under . . . the Carmack Amendment . . . [e]ven if this Court were to consider the supplemental materials provided by the parties regarding CECO's licensure/registration."); *Mitsui Sumitomo Ins. Co. v. Wheels MSM Canada, Inc.*, No. 16-cv-4638, 2016 WL 6395428, at *4 (N.D. Ill. Oct. 28, 2016) ("Wheels contends that it was plainly a carrier because it identified itself as a 'carrier' in the bill of lading it issued and it identified itself as a 'carrier' in its written agreement with Sharp. . . . [I]t would be premature to decide now, before Wheels has even answered, let alone engaged in discovery, whether to classify Wheels as a broker or a carrier."); *TRG Holdings, LLC v. Leckner*, No. 1:06-cv-411 JCC, 2006 WL 2076768, at *2 (E.D. Va. July 20, 2006) ("At this stage of the proceedings, when the complaint is to be liberally construed in favor of plaintiff, the Court cannot definitively conclude that Defendant was a motor carrier. The complaint stresses that Defendant arranged for the transportation, and as such he would classify as a broker. Discovery can flesh out the exact nature of

13

[defendant's] role, and if necessary, the parties can re-argue the issue with more to contemplate than a pleading."); *Mach Mold Inc. v. Clover Assocs., Inc.*, No. 03-cv-7757, 2004 WL 2005812, at *4 (N.D. Ill. Sept. 1, 2004) ("[T]he court finds that it would be inappropriate to render at this [motion to dismiss] juncture a ruling on the merits of this dispositive issue (*i.e.*, whether Clover was a 'carrier' or a 'broker' at the relevant time).").

At this stage the Court is bound by the allegations in the Third Amended Complaint. There, High Road alleges Nolan "entered into an agreement to transport goods" from Georgia to Texas, High Road tendered the goods to Nolan, and Nolan maintained actual or constructive possession of the goods during the shipment.[26] That is enough to state a plausible claim at this juncture. It is inappropriate for the Court to delve further and make any factual determinations regarding the precise nature of Nolan's business status or activities as to the April 2018 shipment at this stage.[27]

Therefore, Nolan is not entitled to the dismissal of Count I.

---

[26]   ECF 30, ¶¶ 20, 21, 24, 26, 37.

[27]   Nothing in this Order precludes Nolan from reasserting this argument in a motion for summary judgment at the appropriate time.

14

**b.    High Road's Common Law Negligence Claim Is Preempted (Count II)**

Nolan contends High Road's state law negligence claim must be dismissed because it is preempted by the Interstate Commerce Commission Termination Act ("ICCTA").

The ICCTA contains preemption provisions curtailing a state's authority to regulate transportation by motor carriers. 49 U.S.C. § 14501. One preemption clause, relevant here, provides that:

> [A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).

Based on the text of this statute, the Court has held that "Congress intended for the preemption provision . . . to be broad in scope and . . . preclude[ ] any state enforcement action having a connection with or reference to any price, route, or service of any motor carrier." *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 668 (N.D. Ga. 1997). *See also Fed. Ins. Co. v. Nolan Transportation Grp., Inc.*, No. 1:15-cv-00344-CC, 2016 WL 9000042, at *3 (N.D. Ga. Oct. 12, 2016) ("A state enforcement action is 'related to' any price, route, or service of a broker if it has a connection with or reference to such a plan."); *Yellow Transp.,*

*Inc. v. DM Transp. Mgmt. Servs., Inc.*, No. 2:06-cv-1517-LDD, 2006 WL 2871745, at

*2 (E.D. Pa. July 14, 2006) ("In other words, a state claim is preempted under

§ 14501(c)(1) of the ITTCA when: (1) the subject of the claim expressly refers to, or

has more than a tenuous effect upon, a motor carrier's rates, routes, and services;

and (2) the claim involves the enforcement of a state law, regulation, or policy

which exceeds those conditions voluntarily agreed upon by the parties.").

Therefore, a "state law tort action against a carrier, where the subject matter of the

action is related to the carrier's prices, routes, or services, is a state enforcement

action having a connection with or reference to a price, route, or service of any

motor carrier" and is preempted. *Deerskin*, 972 F. Supp. at 672.

For its negligence claim, High Road alleges that "[i]n addition to acting as

carrier, [Nolan] undertook to arrange for the subcontract of the trucking carriage

for High Road's goods contained within the shipment."[28] High Road alleges Nolan

owed it a duty to "ensure the other trucking carrier it selected to subcontract with

was at all material times fit for and suitable to perform" the subcontract, including

confirming the subcontractor possessed sufficient insurance coverage.[29]

According to High Road, Nolan breached its duty by failing to fully vet the

---

[28]   ECF 30, ¶ 42.

[29]   *Id.* ¶ 43.

subcontractor, including its "proper licensure, performance history, and appropriate insurance."[30] In other words, High Road alleges Nolan should have expended more time and performed a more thorough investigation of Davis Xpress before selecting it as the subcontractor for the April 2018 shipment.[31]

Based on these allegations, the Court finds that High Road's negligence claim is "related to" a "price, route, or service." As such, the claims falls squarely within the ICCTA's preemption provisions. The Court does not find High Road's invocation of a "safety exception" persuasive.[32] *See City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 438 (2002) ("It is the expressed intent of § 14501(c)(2)(A) that the preemption rule of § 14501(c)(1) not restrict the existing safety regulatory authority of a State."). Contrary to High Road's characterization, this case does not concern a state's "safety regulatory authority." Rather, High Road's negligence claim is premised on allegations that Nolan breached its duty to select a more satisfactory subcontractor.

Therefore, Nolan is entitled to the dismissal of Count II.

---

[30] *Id*. ¶ 44.

[31] *See* ECF 57 ("[High Road's] negligence claim against [Nolan] is based on its negligent hiring of Davis Xpress and its failure to exercise due care in ensuring that [High Road's] ice cream did not melt during transport.").

[32] *See id*. at 19–22.

c.      **High Road's Breach of Contract Claim (Count III)**

Nolan contends High Road's breach of contract claim must be dismissed because the parties never directly executed a contract and High Road fails to properly allege Nolan is a third-party beneficiary under the relevant subcontracts.

i.      **Choice of Law**

"In diversity cases, the choice-of-law rules of the forum state determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). This includes the forum state's own choice of law rules. *Ferguson v. Trans World Airlines, Inc.*, 135 F. Supp. 2d 1304, 1308 (N.D. Ga. 2000). "Pursuant to Georgia law, contractual choice-of-law provisions will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state." *Nat'l Freight, Inc. v. Consol. Container Co., LP*, 166 F. Supp. 3d 1320, 1326 (N.D. Ga. 2015) (quoting *CS–Lakeview at Gwinnett, Inc. v. Simon Prop. Grp., Inc.*, 283 Ga. 426, 428 (2008)).

Absent a contractual choice-of-law provision, "Georgia's choice of law rules follow the doctrine of *lex loci contractus*: the law of the place where the contract is made." *Shorewood Packaging Corp. v. Commercial Union Ins. Co.*, 865 F. Supp. 1577, 1578 (N.D. Ga. 1994). *See also Mt. Hawley Ins. Co. v. E. Perimeter Pointe Apartments, LP*, 409 F. Supp. 3d 1319, 1327 (N.D. Ga. 2019) ("The rule of *lex loci contractus* still

18

governs choice of law in contract cases."). A contract is "made" in "the place where the last act essential to the completion of the contract was done." *Shorewood*, 865 F. Supp. at 1578. In instances where that "last act" occurred in another state, Georgia' choice-of-law rules "limit the application of [that] jurisdiction's laws to statutes and decisions construing those statutes." *Trusted Data Sols., LLC v. Kotchen & Low, LLP*, No. 1:14-cv-1419-TCB, 2015 WL 11251959, at *3 (N.D. Ga. Feb. 6, 2015) (collecting cases). As such, "when no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.*

High Road's breach of contract claim involves two contracts: (1) the February 27, 2018 subcontract between USCS and Nolan;[33] and (2) the February 20, 2018 subcontract between Nolan and Davis Xpress.[34]   High Road does not allege it entered into a direct contractual agreement with Nolan. Instead, High Road contends that, "as the shipper and owner of the goods in the shipment, and ultimate customer of USCS, [National Indemnity], and Davis Xpress, [it] was the known and intended beneficiary of the transportation and carrier agreements

---

[33]   ECF 57-3.

[34]   ECF 57-4. While High Road did not attach these contracts to its Third Amended Complaint, it did attach and rely on them in its motion for leave to file its Second Amended Complaint [ECF 21-5; ECF 21-6].

between USCS, [National Indemnity], and Davis Xpress."[35] Thus, the issue is whether High Road is a third-party beneficiary under the two subcontracts involving USCS, Nolan, and Davis Xpress.

Starting with the subcontract between Nolan and Davis Xpress, Paragraph 20 of that subcontract provides that "the performance of this agreement shall be construed under and governed by the laws of the state of Georgia, regardless of conflict of laws provisions."[36] The parties do not dispute the applicability of Georgia law to this subcontract and none have suggested that such an application would violate public policy or be prejudicial to the interests of any state. Accordingly, the choice of law provision is valid and Georgia law applies to this subcontract.

The February 27, 2018 subcontract between USCS and Nolan does not contain a choice-of-law provision. The record is not clear whether it was made in New Jersey or Georgia (where USCS and Nolan are respectively based), or some third state. However, since High Road's breach of contract claim is not based on a specific state statute, the Court applies Georgia common law. *Trusted Data*, 2015

---

[35]   ECF 30, ¶ 57.

[36]   ECF 57-4, at 6.

WL 11251959, at *3. Moreover, the parties cite exclusively to Georgia law and none suggest that its application would violate any public policy or interest.

### ii. Discussion

Georgia law permits third-party beneficiaries to assert claims under a contract. O.C.G.A. § 9-2-20(b) ("The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract."). Third-party beneficiary status "depends upon the intention of the contracting parties to benefit the third party, and this intention is determined by a construction of the contract as a whole." *Am. Fletcher Mortg. Co. v. First Am. Inv. Corp.*, 463 F. Supp. 186, 195 (N.D. Ga. 1978). Put another way, "[a] third-party beneficiary contract is one in which the promisor engages to the promisee to render some performance to a third person." *Dominic v. Eurocar Classics*, 310 Ga. App. 825, 828 (2011). To obtain this status, the contracting parties must demonstrate in the contract itself their intention to benefit the third party. *Id.* ("A third party has standing to enforce that type of contract if it clearly appears from the contract that it was intended for his benefit; the mere fact that he would benefit from performance of the contract is insufficient."). There is no requirement, however, "that the third-party beneficiary be specifically named in the contract." *CDP Event Servs., Inc. v. Atcheson*, 289 Ga. App. 183, 184 (2008). *See also Estate of*

*Pitts v. City of Atlanta*, 312 Ga. App. 599, 603 (2011); *Marvel Enters. v. World Wrestling Fed'n Entm't*, 271 Ga. App. 607, 615 (2005). If the contract is silent regarding the "intent to confer a benefit upon a plaintiff, the plaintiff may not recover as a third-party beneficiary to the contract." *Boller v. Robert W. Woodruff Arts Ctr., Inc.*, 311 Ga. App. 693, 698 (2011).

Neither subcontract discusses nor confers any direct benefit on High Road. Instead, the subcontract between Nolan and Davis Xpress vaguely refers to Nolan's "Clients" at certain portions. For example, the subcontract prohibits Davis Xpress from invoicing a "Client" for transportation services and states that Nolan will collect all freight charges from its "Client."[37] In a different section, the broker carrier agreement states that Nolan "may invoice the 'Clients' for service charges in addition to the freight charge."[38] Likewise, in the subcontract between USCS and Nolan, "customer" is defined as "the shipper, consignor, consignee, owner or any other party or its agent with interest in the shipment."[39] While this definition may implicitly cover High Road as the owner of, and party of interest to, the April 2018 shipment, mere inclusion within a contractual definition is insufficient to

---

[37] ECF 57-4.

[38] *Id*.

[39] ECF 57-3 (emphasis added).

confer third-party beneficiary status under Georgia case law. Moreover, High Road does not allege Nolan breached any specific portion of the subcontract that may implicitly cover High Road. While High Road may have been the "known" beneficiary of the subcontracts for shipment of the ice cream from Georgia to Texas, there is nothing in the agreements themselves that allows High Road to recover as a third-party beneficiary. The law is clear that the "mere fact that [it] would benefit from performance of the contract is insufficient" to confer third-party standing. *Dominic*, 310 Ga. App. at 828. The Court concludes that High Road is not a third-party beneficiary under Georgia law.

Therefore, Nolan is entitled to the dismissal of Count III.

### d.    Conclusion

Based on the foregoing, Nolan's motion to dismiss [ECF 44] is **GRANTED IN PART and DENIED IN PART**. High Road's claims for negligence (Count II) and breach of contract (Count III) are **DISMISSED WITH PREJUDICE**. High Road shall be permitted to proceed against Nolan only on its claim under the Carmack Amendment (Count I).

## IV.    ONEBEACON'S MOTION TO DISMISS

In the Third Amended Complaint, High Road alleges OneBeacon contracted with Davis Xpress to provide liability insurance for the ice cream cargo in the April

2018 shipment.[40] OneBeacon, conversely, contends that the claim against it must be dismissed because it did not, in fact, issue the insurance policy on which High Road bases its claims.

### a.   The Court Will Consider Extrinsic Documents to Resolve the Motion to Dismiss Without Conversion to Summary Judgment.

As a threshold issue, the Court finds it appropriate to consider the insurance policy issued to Davis Xpress, Policy No. 790-02-42-66-0000 ("Policy"),[41] and the Certificate of Liability Insurance ("Certificate") provided to Nolan by Davis Xpress.[42] High Road did not attach these documents to the Third Amended Complaint. However, High Road did attach and rely on the Certificate in its prior motion for leave to file a Second Amended Complaint,[43] and both documents are central to High Road's claim against OneBeacon.

As a general rule, on a motion to dismiss, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). *See also Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) ("The district court generally must convert

---

[40]   ECF 30, ¶¶ 8, 15, 66.

[41]   ECF 70-1.

[42]   ECF 66-1.

[43]   ECF 21-3.

a motion to dismiss into a motion for summary judgment if it considers materials

outside the complaint."). The Eleventh Circuit, however, recognizes three

exceptions to this rule:

> First, conversion will not occur if the court properly takes judicial notice of attached exhibits. Second, a document attached to the pleadings as an exhibit may be considered if it is central to the plaintiff's claim and the authenticity of the document is not challenged. Third, the conversion is harmless and does not require notice if the parties, *inter alia*, made all arguments and submitted all the documents they would have even with sufficient notice.

*Adamson v. Poorter*, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007)

(citations omitted). *See also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)

("Our Rule 12(b)(6) decisions have adopted the 'incorporation by reference'

doctrine . . . under which a document attached to a motion to dismiss may be

considered by the court without converting the motion into one for summary

judgment only if the attached document is: (1) central to the plaintiff's claim; and

(2) undisputed.").

There is no doubt the Policy is central to High Road's claim against

OneBeacon. High Road alleges OneBeacon is liable because it "is the insurer for

Defendant Davis Xpress" and "provided liability insurance for the cargo, which is

the subject of the Shipment and this claim."[44] The Policy is a relationship-forming document at the core of High Road's claim. *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1344 n.3 (11th Cir. 2005) ("[A] document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of its authenticity."); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC,* 600 F.3d 1334, 1337 (11th Cir. 2010) (citing *Maxcess, Inc.*, 433 F.3d at 1340 n.3) ("We have previously held that such relationship-forming contracts are central to a plaintiff's claim."). *See also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal").

As to authenticity, High Road argues the Court should not consider the document attached to OneBeacon's motion to dismiss because OneBeacon did not authenticate it or provide evidence that it is accurate, complete, and true. In its reply, OneBeacon cures this perceived deficiency by submitting an identical version of the Policy prefixed with a cover letter from a senior underwriting

---

44   ECF 30, ¶¶ 8, 15.

manager for Atlantic Specialty Insurance Company authenticating the Policy.[45]

OneBeacon contends it only received this certified copy of the Policy after it filed

its motion to dismiss.[46] Since the Court may rely on a certified copy of an insurance

policy—and the authenticated and unauthenticated versions of the Policy are

identical—the Court finds no reason to exclude the Policy. *Cf. Majesko v. Nationwide*

*Mut. Ins. Co.*, No. 1:16-cv-222-MHC, 2017 WL 3499870, at *2 (N.D. Ga. Jan. 24, 2017).

Thus, the Court will consider it to resolve this motion to dismiss.

The Certificate is likewise a relationship-forming document that provides

the basis for High Road's claim against OneBeacon.[47] OneBeacon does not argue

otherwise or challenge its authenticity. Thus, the Court finds it appropriate to

consider the Certificate in resolving this motion to dismiss.

---

[45]   ECF 70-1. Since the Court considers the authenticated version of the Policy attached for the first time to OneBeacon's reply, it also considers the arguments made in High Road's surreply. *Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1349 (N.D. Ga. 2017) ("[A surreply] will typically be accepted by the Court only in unusual circumstances, such as where a movant raises new arguments or facts in a reply brief, or where a party wishes to inform the Court of a new decision or rule implicating the motion under review."). As such, High Road's motion for leave to file a surreply [ECF 71] is **GRANTED**.

[46]   *Id*. at 3.

[47]   ECF 30, ¶ 8 (alleging OneBeacon "is the insurer for Defendant Davis Xpress for purposes and times relevant to this dispute"); *id.* ¶ 15 ("OneBeacon provided liability insurance for the cargo, which is the subject of the Shipment and this claim.").

### b. High Road's Claim Against OneBeacon Must Be Dismissed.

As stated above, High Road's sole allegation of liability against OneBeacon is that it issued the Policy to Davis Xpress, thus providing liability insurance coverage for the April 2018 shipment. In doing so, High Road lumps OneBeacon together with National Indemnity and ten unnamed "Doe" insurance companies—one (or none) of which may actually have issued the Policy to Davis Xpress.[48] OneBeacon counters that it is not a proper party to this action because Atlantic Specialty Insurance Company (Atlantic Specialty) issued the Policy, not OneBeacon. Notably, there is no dispute that the Policy is the relevant insurance policy covering the April 2018 shipment.

The Policy repeatedly identifies Atlantic Specialty as the issuing insurer. For example, in the subsection entitled "Motor Truck Cargo Carrier's Liability Coverage Form," the Policy provides: "Throughout this Policy . . . [t]he words we, us, and our refer to the Company providing this insurance."[49] Atlantic Specialty is identified as the "Insurance Company" in the Policy's declarations.[50] The Policy's

---

[48] ECF 30, ¶¶ 65–66.

[49] ECF 70-1, at 33.

[50] *Id*. at 5, 9.

schedule of forms and endorsements also state Atlantic Specialty issued the Policy to Davis Xpress.[51]

To be clear, OneBeacon's name and logo frequently appear in the Policy. For instance, OneBeacon's name is printed in certain headers and footers indicating it has copyright protection in those forms.[52] The Policy also states that an insured may report claims to OneBeacon through its "Claims Call Center."[53] However, as OneBeacon notes, mere reference to its name and logo in the Policy does not otherwise amend or rewrite the Policy to make it the issuer.[54] High Road cites no case law providing that a company owning copyright protection in the policy forms used by another company, or listed as a company providing a service in the Policy, can be liable when it is not itself a party to the insurance contract. Indeed, High Road's argument is seemingly undermined by the presence of another insurance company's name and logo—Vantage for Inland Marine—in the Policy. Accepting High Road's argument, there would be an equally strong case for

---

[51]   *Id*. at 11, 19, 44, 45, 46, 48, 49, 50, 51.

[52]   *E.g.*, *id*. at 4.

[53]   *Id*. at 7.

[54]   *See* ECF 47-1, at 7 (collecting cases).

Vantage to be deemed the insurer in the Policy. Instead, the Policy itself makes clear that Atlantic Specialty is the issuer.

An analysis of the Certificate does not change this conclusion. It is true that, in the subsection entitled "insurer(s) affording coverage," Davis Xpress listed: (1) County Hall Insurance Company Inc. and (2) OneBeacon Insurance Group.[55] However, the Certificate contains no other facts or references linking either of these companies to the Policy at issue. Moreover, the Certificate expressly states: "This Certificate is issued as a matter of information only and confers no rights upon the certificate holder. This Certificate ***does not*** affirmatively or negatively amend, extend or alter the coverage afforded by the policies below."[56] Thus, OneBeacon's inclusion in a list of insurers affording some undefined insurance coverage to Davis Xpress does not negate or amend the identity of the Policy's issuer: Atlantic Specialty.

At bottom, while High Road alleges OneBeacon—among a host of other insurance companies—issued the Policy, the Court is not required to accept the truth of this allegation because it is affirmatively negated by evidence the Court may consider on a motion to dismiss. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206

---

[55]   ECF 66-1, at 2.

[56]   *Id*. (emphasis added). The Certificate does not list or refer to Atlantic Specialty.

(11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). The Complaint does not allege any facts indicating OneBeacon is otherwise liable to High Road as a third-party beneficiary or under a theory of an agency relationship with Atlantic Specialty.

Therefore, since OneBeacon did not issue the Policy, it is not a proper party to this action and the claims against it must be dismissed.

c.    **Conclusion**

Based on the foregoing, OneBeacon's motion to dismiss [ECF 47] is **GRANTED**. Count IV against OneBeacon is **DISMISSED WITH PREJUDICE**.

**V.      CONCLUSION**

In sum: (1) Nolan's motion to dismiss [ECF 44] is **GRANTED IN PART and DENIED IN PART**; (2) OneBeacon's motion to dismiss [ECF 47] is **GRANTED**; and (3) High Road's motion for leave to file a surreply [ECF 71] is **GRANTED**.

**SO ORDERED** this the 15th day of May 2020.

_____
Steven D. Grimberg
United States District Court Judge